DAN SIEGEL, SBN 056400
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Emails: danmsiegel@gmail.com;
emilyrose@siegelyee.com

Attorneys for Plaintiff
JASPER SKYDECKER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASPER SKYDECKER, | ) Case No. |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES** |
| vs. | ) Civil Rights |
| COUNTY OF ALAMEDA, WELLPATH, CALIFORNIA FORENSIC MEDICAL GROUP, GERRI MCCLEAN, DOES 1 through 10 inclusive, | ) Jury Trial Demanded |
| Defendants. | |

**INTRODUCTION**

1. JASPER SKYDECKER was seriously injured after COUNTY OF ALAMEDA deputies and medical staff in Santa Rita Jail failed to accommodate his seizure disorder and housed him on a top bunk, from which he fell after suffering a grand mal seizure.

2. Mr. SKYDECKER lives with a seizure disorder that causes petit mal and grand mal seizures.

3. Mr. SKYDECKER was arrested on May 19, 2023 and transported to Santa Rita Jail after California Highway Patrol officers mistook his postictal symptoms as signs of public intoxication.

4. Mr. SKYDECKER was subject to conditions that are high stressors for seizure disorders, including being held overnight in a freezing cell without a blanket and being offered a diet of sugary and heavily processed foods.

5. When Mr. SKYDECKER was finally placed in a cell, he was not permitted a low tier, low bunk assignment.

6. Mr. SKYDECKER had a seizure overnight and fell from the top bunk to the cement floor.

7. Mr. SKYDECKER suffered multiple fractures to his nose and a large, disfiguring laceration on his forehead.

8. He was released from jail to the hospital and was never charged with any public offense.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 (claims arising under the U.S. Constitution), § 1343(a)(3) (claims brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the U.S. Constitution), 42 U.S.C. § 1983, and 42 U.S.C. § 12132.

10. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) because defendants are located in the Northern District of California and § 1391(b)(2) because all of the acts and/or omissions complained of herein occurred within the Northern District of California.

## PARTIES

11. Plaintiff JASPER SKYDECKER is a person with medically refractory epilepsy, a significant seizure disorder. During all relevant times, Mr. SKYDECKER was a resident of Oakland, California.

12. Defendant COUNTY OF ALAMEDA is a public entity organized under the Constitution and laws of the State of California and is responsible for the policies and funding of the Alameda County Sheriff's Department. The COUNTY OF ALAMEDA operates the Santa Rita Jail under its authority.

13. Defendant WELLPATH is a corporation licensed to and doing business in the State of California, as a contracted provider of medical and mental health services to the COUNTY OF ALAMEDA and its jail system. They share a corporate identity and/or operate in partnership with California Forensic Medical Group.

14. Defendant California Forensic Medical Group ("CFMG") is a corporation licensed to and doing business in the State of California, as a contracted provider of medical and mental health services to the COUNTY OF ALAMEDA and its jail system. They share a corporate identity and/or operate in partnership with WELLPATH.

15. Defendant GERRI MCCLEAN was at all relevant times employed by WELLPATH/CFMG to provide medical care in Santa Rita Jail.

16. The true names and identities of Defendants DOES 1 through 10 are presently unknown to plaintiff. Plaintiff alleges that each of Defendants DOES 1 through 10 was employed by the COUNTY OF ALAMEDA and/or the Alameda County Sheriff's Department, and/or WELLPATH/CFMG to work in correctional facilities in Alameda County at the time of the conduct alleged herein. Plaintiff alleges that each of Defendants DOES 1 through 10 was deliberately indifferent to plaintiff's medical needs and safety, violated his civil rights, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct. Plaintiff further alleges that Defendants DOES 1 through 10 violated plaintiffs' rights under the American with Disabilities Act and section 504 of the Rehabilitation Act. Plaintiff further alleges that each of Defendants DOES 1 through 10 was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of medical, mental health, and jail custody employees and/or agents involved in the conduct alleged herein. Each DOE defendant was an employee/agent of the COUNTY OF ALAMEDA, WELLPATH/CFMG, and/or of each other, and at all material times acted under color of law within the course and scope of that relationship.

**FACTUAL ALLEGATIONS**

17. JASPER SKYDECKER has medically refractory epilepsy—a severe seizure disorder where disabling seizures continue despite use of antiseizure medication. He has undergone brain

surgery to treat his seizure disorder and alleviate its severity, but the surgery did not completely treat his disorder and he still has seizures on a regular basis.

18. Mr. SKYDECKER manages his seizure disorder by trying to control his environment and his diet. He avoids extreme temperatures and avoids sweet or processed foods because those are triggers for seizures.

19. On May 19, 2023, Mr. SKYDECKER was walking home when he had a seizure and became postictal. Officers from California Highway Patrol encountered him in his postictal state, accused him of being intoxicated in public, arrested him, and took him to Santa Rita Jail in the COUNTY OF ALAMEDA.

20. Mr. SKYDECKER was medically accepted to the jail on May 19, 2023, at 7:40 p.m. Defendant GERRI MCCLEAN, the WELLPATH/CFMG nurse who cleared him, documented that he suffered from grand mal seizures and took Klonopin and Gabapentin.

21. Mr. SKYDECKER was visibly postictal, and he reported to GERRI MCCLEAN that he had a seizure before encountering the police that evening.

22. Because he was postictal, Mr. SKYDECKER was disoriented and unable to adequately care for himself. These are known and common postictal symptoms.

23. Mr. SKYDECKER needed access to a bed on a lower bunk and water to rest and hydrate so that he could recover.

24. Rather than allow Mr. SKYDECKER to rest, COUNTY OF ALAMEDA deputies, GERRI MCCLEAN, and other WELLPATH/CFMG medical staff took Mr. SKYDECKER through a long and uncomfortable intake process overnight, denying him the ability to sleep and placing him in an extremely cold cell without access to a mattress or to water.

25. GERRI MCCLEAN and/or other WELLPATH/CFMG staff discriminated against Mr. SKYDECKER by treating his common postictal symptoms as symptoms of intoxication and denying him the care he needed to recover from his seizure and putting him at greater risk of suffering another seizure.

26. COUNTY OF ALAMEDA deputies and/or WELLPATH/CFMG medical staff assigned Mr. SKYDECKER to a cell with another person already housed in it.

27. The cell was extremely cold and filthy with visible pools of urine on the floor, and the other person in the cell was already occupying the bottom bunk. The person occupying the bottom bunk screamed and yelled at Mr. SKYDECKER causing Mr. SKYDECKER to fear for his safety, especially in his weakened, postictal, sleep-deprived state.

28. Mr. SKYDECKER told the COUNTY OF ALAMEDA deputy that took him to his cell that he must have a lower bunk because he has seizures.

29. The COUNTY OF ALAMEDA deputy intentionally ignored Mr. SKYDECKER's critical information and told Mr. SKYDECKER that he needed to "stop being difficult" or words to that effect while gesturing to him to or otherwise indicating that he must climb onto the top bunk.

30. The COUNTY OF ALAMEDA deputy took no action to inquire of the other prisoner in that cell whether they could be placed on the top bunk instead of Mr. SKYDECKER.

31. On information and belief, the COUNTY OF ALAMEDA deputy took no action to check for an available bottom bunk in any other housing unit.

32. On information and belief, the COUNTY OF ALAMEDA deputy took no action to determine whether Mr. SKYDECKER suffered from seizures and needed a lower bunk

33. On information and belief, the COUNTY OF ALAMEDA deputy took no action to alert other correctional staff of the possibility that Mr. SKYDECKER was disabled and required additional care and monitoring.

34. COUNTY OF ALAMEDA deputies denied Mr. SKYDECKER a mattress and a blanket, leaving only the urine-soaked floor or the barren top bunk where he could lie down.

35. Mr. SKYDECKER was further denied access to water and/or assistance retrieving water, and he was provided only sugary and processed food.

36. Conditions such as extreme cold, sugary or processed foods, and lack of sleep are known risks for seizure for persons with epilepsy.

37. Mr. SKYDECKER was left in these dire conditions, confused, in need of rest and basic care, and utterly exhausted. With no other option, Mr. SKYDECKER slept on the top bunk without a mattress or blanket.

38. On at least two occasions while Mr. SKYDECKER was in this cell assigned to the top bunk, WELLPATH/CFMG medical staff came to Mr. SKYDECKER's cell. Each WELLPATH/CFMG medical staff member had the opportunity to and did see Mr. SKYDECKER's top bunk assignment. No WELLPATH/CFMG medical staff member took any steps to ensure that Mr. SKYDECKER received the bottom bunk or was moved to a cell where a bottom bunk was available.

39. Further, no COUNTY OF ALAMEDA deputy who observed Mr. SKYDECKER on the top bunk took any steps to accommodation his disability.

40. On the evening of May 20, 2023, Mr. SKYDECKER went to sleep on the top bunk.

41. Between approximately midnight and 1 a.m. on May 21, 2023, Mr. SKYDECKER had a violent seizure and fell to the ground on his face.

42. Mr. SKYDECKER suffered significant physical injuries including but not limited to a badly broken nose, disfiguring forehead laceration, a black eye, bruising and swelling to his face, and raised lumps on his head.

43. Mr. SKYDECKER also suffered emotional distress, pain and suffering, humiliation, and loss of economic opportunity as a result of defendants' failure to accommodate his disability.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
(against defendant COUNTY OF ALAMEDA)
(42 U.S.C. § 12132)

44. Mr. SKYDECKER reincorporates by reference each of the preceding paragraphs and allegations as if fully set forth herein.

45. Mr. SKYDECKER is a disabled person whose major life activities are substantially limited as a result of his seizure disorder. When suffering a seizure, Mr. SKYDECKER cannot speak, walk, sit up, control his bodily movements or care for himself. As a result of his disability, Mr. SKYDECKER cannot safely sleep on a top bunk even when given anti-seizure medication. Thus, Mr. SKYDECKER is a qualified individual under the ADA.

46. Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or

be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

47. Under Title II of the Americans with Disability Act, public entities are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA sets an affirmative requirement to act appropriately with respect to prisoners with disabilities.

48. The ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

49. Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

50. Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his mental or physical health. These accommodations include specialized training of jail staff, heightened level of medical care, and diligent surveillance.

51. In order to safely enjoy the benefit of a bed provided to all prisoners, Mr. SKYDECKER required an accommodation – a bottom bunk due to his chronic seizure disorder. Defendant COUNTY OF ALAMEDA and their contractor WELLPATH/CFMG failed to make reasonable accommodations to Mr. SKYDECKER's disability-related needs based on his seizure disorder. Defendants denied Mr. SKYDECKER the benefits of the services, programs or activities including an assignment to a safe place to sleep, which is among the services, programs or activities they provide.

52. Defendants violated Mr. SKYDECKER's clearly established rights under the ADA with deliberate indifference.

53. As a direct and proximate result of the Defendant COUNTY OF ALAMEDA's conduct or that of its employees and/or contractors WELLPATH/CFMG as herein described, Mr. SKYDECKER suffered in the amount to be determined at the time of trial.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE REHABILITATION ACT**
(against COUNTY OF ALAMEDA)
(29 U.S.C. §794(a))

54. Mr. SKYDECKER reincorporates by reference each of the preceding paragraphs and allegations as if fully set forth herein.

55. The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

56. Santa Rita Jail, operated by defendant COUNTY OF ALAMEDA, is a program that receive federal financial assistance as defined in 29 U.S.C. § 794(b).

57. Mr. SKYDECKER is a "qualified individual with a disability" under the Rehabilitation Act.

58. Defendant COUNTY OF ALAMEDA violated the Rehabilitation Act by failing to make reasonable accommodations to the needs of Mr. SKYDECKER, a disabled person. It was a reasonable accommodation to place him on a bottom bunk.

59. Employees of defendant COUNTY OF ALAMEDA were deliberately indifferent to Mr. SKYDECKER's serious medical condition.

60. Defendant COUNTY OF ALAMEDA knew of the substantial risk of harm to Mr. SKYDECKER from his serious, diagnosed condition and they responded with deliberate indifference by failing to place him in a bottom bunk.

61. As a direct and proximate result defendant's conduct as herein described, Mr. SKYDECKER suffered in the amount to be determined at the time of trial.

### THIRD CLAIM FOR RELIEF
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
(against GERRI MCCLEAN and DOE Defendants)
(42 U.S.C. § 1983)

62. Mr. SKYDECKER reincorporates by reference each of the preceding paragraphs and allegations as if fully set forth herein.

63. Mr. SKYDECKER informed GERRI MCCLEAN, an employee of WELLPATH, that he had a seizure disorder and required a bottom bunk to avoid the known and predictable serious injury or death that could result from falling from a top bunk during a seizure.

64. GERRI MCCLEAN failed to take all necessary steps to ensure that Mr. SKYDECKER was assigned to a lower tier lower bunk.

65. When Mr. SKYDECKER was placed in a cell, the bottom bunk was occupied by another prisoner.

66. Mr. SKYDECKER informed a COUNTY OF ALAMEDA deputy that he suffered from seizures and needed a bottom bunk. The deputy ushered Mr. SKYDECKER onto the top bunk.

67. The COUNTY OF ALAMEDA deputy took no action to inquire of the other prisoner in that cell whether they could be placed on the top bunk instead of Mr. SKYDECKER; took no action to check for an available bottom bunk in any other housing unit; took no action to determine whether Mr. SKYDECKER suffered from seizures and needed a lower bunk; and took no action to alert other correctional staff of the possibility that Mr. SKYDECKER was disabled and required additional care and monitoring.

68. Defendants subjected Mr. SKYDECKER to conditions that are known to exacerbate the risks of seizures, including being placed in extremely cold temperatures, being fed sugary and processed food, and denied sleep.

69. WELLPATH/CFMG employees on at least two occasions observed Mr. SKYDECKER on the top bunk. Each employee failed to take action to ensure that Mr. SKYDECKER had a lower bunk.

70. That night, while lying in his bed on the top bunk, Mr. SKYDECKER suffered a seizure. After suffering a seizure, Mr. SKYDECKER fell from his bunk to the cement floor.

71. Each of the defendants were deliberately indifferent to a known and serious medical need.

72. Defendants failed to properly communicate to other medical and corrections staff the necessary medical information so that Mr. SKYDECKER would receive medical attention and housing assignment.

73. A COUNTY OF ALAMEDA deputy refused Mr. SKYDECKER a bottom bunk after Mr. SKYDECKER advised that he had had a seizure disorder.

74. A COUNTY OF ALAMEDA deputy took no action to secure a bottom bunk in another housing cell after being advised of Mr. SKYDECKER's seizures.

75. As a direct and proximate result defendant's conduct as herein described, Mr. SKYDECKER suffered in the amount to be determined at the time of trial.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF THE BANE ACT**
(against GERRI MCCLEAN, WELLPATH, CFMG, and DOE WELLPATH/CFMG Defendants)
(Cal. Civ. Code §52.1)

76. Mr. SKYDECKER reincorporates by reference each of the preceding paragraphs and allegations as if fully set forth herein.

77. By their acts, omissions, customs, and policies, defendant GERRI MCCLEAN, WELLPATH/CFMG, and DOE WELLPATH/CFMG Defendants, by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Mr. SKYDECKER's rights under California Civil Code § 52.1, under the ADA and Rehabilitation Act, and under the United States Constitution and California Constitution as follows:

    a. The right to be free from objectively unreasonable treatment and deliberate indifference to Mr. SKYDECKER's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by the California Constitution, Article 1, §§ 7 and 13;

    b. The right to reasonable accommodations under the ADA and Rehabilitation Act;

    c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

    d. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

78. Defendants' violations of Mr. SKYDECKER's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.

79. Alternatively, separate from, and above and beyond, defendants' attempted interference, interference with, and violation of Mr. SKYDECKER's rights as described above, defendants violated Mr. SKYDECKER's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to Mr. SKYDECKER's serious medical needs, suffering, and risk of grave harm including death, depriving Mr. SKYDECKER of necessary care for his medical needs.

b. Deliberately causing the provision of inadequate and incompetent health care to detainees.

c. Choosing not to provide the required bottom bunk.

80. The threat, intimidation, and coercion described herein were not necessary or inherent to defendants' violation of Mr. SKYDECKER's rights, or to any legitimate and lawful jail or law enforcement activity.

81. Further, each defendant violated Mr. SKYDECKER's rights with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights or with reckless disregard to his right to enjoyment of those rights and of the interests protected by those rights.

82. Defendant WELLPATH/CFMG is vicariously liable for the violation of rights by their employees and agents.

83. As a direct and proximate result of defendants' violation of California Civil Code § 52.1 and of Mr. SKYDECKER's rights under the United States and California Constitutions and federal statutes, Mr. SKYDECKER sustained injuries and damages, and against each and every defendant is entitled to relief as set forth above, including punitive damages against all individual defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, treble damages and civil penalties.

**FIFTH CLAIM FOR RELIEF**
**NEGLIGENCE**
(against GERRI MCCLEAN, WELLPATH, CFMG, and DOE WELLPATH/CFMG Defendants)
(Cal. Civ. Code § 1714)

84. Mr. SKYDECKER reincorporates by reference each of the preceding paragraphs and allegations as if fully set forth herein.

85. Defendants GERRI MCCLEAN, WELLPATH/CFMG, and DOE WELLPATH/CFMG Defendants breached their duty of care owed to Mr. SKYDECKER, and this breach was the proximate cause for Mr. SKYDECKER's harm.

86. By virtue of the foregoing, defendant WELLPATH/CFMG is liable for the acts of its employees and agents GERRI MCCLEAN and DOE WELLPATH/CFMG Defendants, all of whom acted within the course and scope of their employment.

## DAMAGES

87. As a direct and proximate result of each defendant's acts and/or omissions as set forth above, Mr. SKYDECKER sustained, and is currently sustaining, the following injuries and damages, past and future, including, but not limited to:

    a. Compensatory damages including medical expenses;

    b. General damages including pain and suffering, emotional distress, humiliation, and loss of liberty;

    c. All other legally cognizable special and general damages

## PUNITIVE DAMAGES

88. In taking the actions described above, the individual defendants intentionally and maliciously violated Mr. SKYDECKER's civil rights and/or acted with reckless disregard as to whether their actions violated Mr. SKYDECKER's civil rights.

89. In taking the actions described above, the individual defendants acted with oppression, fraud and/or malice.

90. As such, Mr. SKYDECKER claims punitive damages against the individual defendants in an amount to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully request the following relief against each and every defendant herein, jointly and severally:

    a. Compensatory damages in an amount according to proof;

    b. General damages;

    c. Special damages;

    d. Punitive damages under 42 U.S.C. § 1983, Civil Code § 3294 and federal and state law in an amount according to proof against all defendants except the public entities;

e. Treble damages under California Civil Code § 52.1(c);

f. Nominal damages;

g. Attorney's fees and costs of suit under 42 U.S.C. § 1988;

h. Attorney's fees and costs of suit under 42 U.S.C. § 12205;

i. Attorney's fees and cost of suit under California Civil Code §§ 52(b)(3) and 52.1(h);

j. All other damages, penalties, costs, interest, and attorney's fees as allowed by 42 U.S.C. §§ 1983 and 1988; 42 U.S.C. § 12205; California Code of Civil Procedure § 102.5; California Civil Code §§ 52 et seq. and 52.1; and as otherwise may be allowed by California and/or federal law;

k. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 16, 2024

                          SIEGEL, YEE, BRUNNER & MEHTA

                          By_____
                             EmilyRose Johns

                          Attorneys for Plaintiff
                          JASPER SKYDECKER